UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LAVERANUES COLES

vs.                                    Case no. 3:05-cv-281-J-33MCR

ANHEUSER BUSCH, INC.
_____

**ORDER**

_____This matter comes before the Court pursuant to the Motion for Summary Judgment (Doc. #19) filed by Anheuser-Busch, Inc., ("ABI") on April 7, 2006.  Coles files a response on April 29, 2006 (Doc. #25).  On July 10, 2006, ABI filed a reply (Doc. #35).  Coles filed a sur-reply on July 17, 2006 (Doc. #37).  For the reasons stated below, the motion for summary is granted.

**I. Facts**

Coles began his employment with ABI in 1985. (Doc. #25 at 1) In 1994, Coles became a brewer at ABI.  (Doc. #20 at 2).  In the course of Coles' employment with ABI, Coles was disciplined numerous times. (Id.)  These disciplinary actions took the form of suspensions, counseling, and reprimands. (Id. at 2).  One such disciplinary action was a thirty day suspension in late 2003.  This suspension stemmed from certain actions and inactions that Coles committed on December 2, 2003. (Id. at 4).  Specifically, on December 2, 2003, group manager Iulia Lopez found Coles sleeping at

his work station.[1] (Doc. #20 at 3). Upon confronting Coles, Lopez asserts that Coles became insubordinate, raising his voice at Lopez. (Lopez Dep. Doc. #21, Ex. 14 at 14). Lopez wrote an incident report regarding the occurrence. (Id.)

Dan Naes, an assistant brewmaster, investigated the incident and drafted a report. (Id. at 4). Naes's report indicated that Coles, by his own admission, falsified records. (Id.) The report further identified Coles' insubordination and that Coles was sleeping on the job. (Id.) As noted, ABI suspended Coles for thirty days as a result of the December 2, 2003 incidents.

On December 23, 2003, Coles entered a last chance agreement. (Doc. #21, Ex. 7 at 25). The terms of the last chance agreement provided that Coles would be subject to immediate discharge for any additional violation of plant rules, "regardless of the severity or type of discipline which would otherwise have been imposed for the infraction(s) involved." (Id. ¶5).

Following his suspension, Coles returned to work on January 7, 2004. (Doc. #20 at 5). On the week of January 12, 2004, less than two weeks after Coles' return to work, Bud Bonner, an assistant brewmaster, reported that he found Coles asleep on the job. (Id.) ABI did not terminate Coles after this incident, but Naes informed Coles that he would not be given any more chances. (Id.)

---

[1] In ascending order, the ABI Jacksonville Brewery management hierarchy is as follows: group manager, area manager, assistant brewmaster, senior assistant brewmaster, and plant manager. (Doc. #20 at 7).

In May 2004, on three consecutive days, Coles was tardy in adding hops to the brew. (Id. at 6). Larry Wolfe, group manager, investigated the three late hops additions. (Id.) Wolfe drafted three incident reports, one for each late hops addition. (Doc. #21, Ex. 7 at 28, 29, and 36). In each report, Wolfe indicated that Coles admitted to the late hops additions. (Doc. #20 at 6).

Cedric Cruse, an area manager, further investigated the late hops additions. (Id. at 7). Based on his investigation and Coles' prior work record, Cruse recommended that Coles be terminated. (Id. at 7-8). The plant manager, Sylvester Robinson, and brewmaster, Steven Foppe, shortly after the May 2004 incidents, made the decision to terminate Coles. (Id. at 8)

Following Coles' termination, Coles prevailed himself of the collective bargaining agreement's grievance process. (Id. at 8). A panel consisting of two union representatives, two company representatives, and a neutral person denied Coles' grievance. (Saggua Aff. Doc. #21, Ex. 19 at ¶5). Coles' termination became effective July 1, 2004. (Id. at ¶6).

Coles filed his initial complaint on February 25, 2005, alleging violations of the Florida Civil Rights Act ("FCRA"), Florida statutes, §§ 760.10, et seq. (Doc. #2). On March 30, 2005, ABI removed. (Doc. #1). Following removal, Coles amended his complaint to include a count for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (Doc. #11). As to

3

both counts, Coles represents and ABI does not challenge that Coles complied with all statutory prerequisites prior to the filing of this suit.

**II. Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

## III. Analysis

As noted, Coles claims that ABI unlawfully terminated his

5

employment because of his race, in violation of FCRA and Title VII. To establish employment discrimination, Coles may use direct, circumstantial or statistical evidence. <u>Standard v. ABEL Servs., Inc.</u>, 161 F.3d 1318, 1331 (11th Cir. 1998).  Coles presents neither direct nor statistical evidence.  As such, Coles' case is limited to circumstantial evidence.

"When a plaintiff offers circumstantial evidence to prove a Title VII claim, we use the analytical framework established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 668 (1973)." <u>Id.</u>  In analyzing alleged violations under FCRA and Title VII, the Court follows the same burden-shifting analysis established in <u>McDonnell Douglas</u> and its progeny. <u>Gamboa v. American Airlines</u>, 170 Fed. Appx. 610, 612 (11th Cir. 2006)(citing <u>Harper v. Blockbuster Entm't Corp.</u>, 139 F.3d 1385, 1387 (11th Cir. 1998)("[c]laims under Title VII and the FCRA are analyzed under the same burden-shifting framework.").  As such the Court analyzes both counts pursuant to the burden-shifting framework of <u>McDonnell Douglas</u> and its progeny.

Under the burden shifting analysis, Coles has the initial burden to establish a prima facie case of discrimination by a preponderance of the evidence. <u>Soto v. Bank of America</u>, Case no. 6:04-cv-782-Orl-28JGG, 2005 U.S. Dist. LEXIS 26050, at *20 (M.D. Fla. Nov. 1, 2005).  Upon establishing a prima facie case, a rebuttable presumption of discrimination arises and the burden

6

shifts to the defendant. <u>Dickinson v. Springhill Hosps., Inc.</u>, No. 05-16885, 2006 U.S. App. LEXIS 16613, at *6 (11th Cir. June 29, 2006)(citing <u>EEOC v. Joe's Stone Crab, Inc.</u>, 220 F.3d 1263, 1272 (11th Cir. 2000)). To rebut the presumption, the defendant must produce "legitimate, nondiscriminatory reasons for the employment action." <u>Standard</u>, 161 F.3d at 1331. If defendant produces such legitimate reasons, the burden shifts back to the plaintiff. At which point, the plaintiff has the burden to create a genuine issue of material fact as to whether the advanced reasons for termination are pretextual. <u>Id.</u> at 1332.

To establish a prima facie case of discrimination, Coles must establish: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he was the subject of an adverse employment action; and (4) he was replaced by someone outside his protected class or was treated less favorably than a similarly situated person outside his protected class. <u>Hammons v. Wallace State Cmty. Coll.</u>, No. 05-14962, 2006 U.S. App. LEXIS 6396 (11th Cir. Mar. 16, 2006))(citing <u>Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dept. of Educ. ex rel Univ. of S. Fla.</u>, 342 F.3d 1281, 1289 (11th Cir. 2003)). ABI does not dispute that Coles, an African-American, is a member of a protected class. Nor does ABI dispute that Coles was subject to an adverse employment action, termination. However, ABI argues that Coles fails to establish by a preponderance of the evidence that Coles was replaced by someone

7

outside Coles' protected class or that Coles was treated less favorably than someone outside his protected class. Further, ABI argues that Coles was not qualified for his position.

ABI identifies that, after Coles' termination, the first two individuals assigned to the brewing department, William Kohn and Michael Findlay, were both African-Americans. Coles does not appear to dispute this claim. As such, there is no genuine issue of material fact that Coles was replaced by a member of his protected class.

As to disparate treatment, ABI argues that Coles cannot point to a similarly situated ABI employee that was treated more favorably than Coles. Finally, noting the late hops additions and Coles' other infractions, ABI argues that Coles was not qualified for the job. Coles disputes these contentions.

As to his qualification for the job, Coles points to his long-term employment with ABI. In Rosenfield v. Wellington Leisure Products, Inc., 827 F.2d 1493 (11th Cir. 1987), the Eleventh Circuit found that "in cases where a plaintiff has held a position for a significant period of time, qualification for that position sufficient to satisfy the test of a prima facie case can be inferred." Id. at 1495 n.2 (citing Pace v. S. Ry. Sys., 701 F.2d 1383, 1386 n.7 (11th Cir. 1983)). As such, the Court finds that Coles has met his burden to establish his qualification for the job.

Regarding disparate treatment, Coles argues that Freddie Zorn, a Caucasian, committed similar infractions, but was not disciplined as severely as Coles. "To show that employees are similarly situated, the plaintiff must establish that the employees are 'similarly situated in all relevant aspects.' The comparator must be 'nearly identical' to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Dickinson, 2006 U.S. App. LEXIS 16613, *7-8 (11th Cir. June 29, 2006)(quoting Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004)(internal citations omitted)).

The record clearly reflects that Zorn and Coles were not similarly situated in all relevant aspects. Unlike Coles, Zorn was not on a last chance agreement.[2] Moreover, unlike Coles, Zorn was not accused of raising his voice to his superiors, sleeping on the job, or falsifying records. It was these three infractions that lead to Coles' thirty day suspension and the requirement that, to retain his job, Coles enter a last chance agreement. Lastly, unlike Coles, Zorn did not commit the same violation, late hops additions, three times on three consecutive days. Those who played a part in Coles' termination placed particular emphasis on the fact that the infractions occurred back-to-back. In his deposition, Cedric Cruse, who recommended Coles' termination, commented on these

---

[2] In fact, the two most recently terminated ABI employees, also under a last chance agreement, were Caucasian. (Saggua Aff. Doc. #21, Ex. 19 ¶9).

consecutive, repeated infractions, stating:

> It's the way you do the job, you do the bear minimum. Late hops, I mean, **three days in a row**, I mean, you do the job and a part of the job is adding your hops on time. And he's not--he wasn't a new employee, he knows the brewing process and how critical that part of the process is, to not take that serious, and **particularly on the same weekend after one incident, to have it happen twice more; that speaks volumes to me about inattention**.

(Cruse Dep. Doc. #21, Ex. 9 at 34)(emphasis added). For these reasons, Zorn was not similarly situated in all relevant aspects. As such, Coles has not established that similarly situated ABI employees, outside Coles' protected class, were treated more favorably. Thus, Coles fails to establish a prima facie case of discrimination.

Even if the Court gave the benefit of the doubt to Coles and found that Coles established a prima facie case of discrimination, Coles' claim would not survive the remainder of the <u>McDonnell Douglas</u> analysis. As required by the <u>McDonnell Douglas</u> burden shifting analysis, ABI has asserted legitimate, non-discriminatory reasons for Coles' dismissal, and Coles has not established a genuine issue of material fact that the proffered reasons are pretextual.

Providing legitimate, non-discriminatory reason for Coles' dismissal, ABI identifies that as a result of insubordination, sleeping on the job and falsifying records, Coles was put on a last chance agreement. Further, ABI identifies that, pursuant to the last chance agreement's terms, Coles was subject to termination for

10

any violation of a company rule, guideline, policy and/or procedure. ABI next identifies that, subsequent to entering the last chance agreement, on three occasions within three days, Coles was late in adding hops to the brew, a violation of plant rules. As such, pursuant to the terms of the last chance agreement, Coles was terminated. Thus, ABI has established a legitimate, non-discriminatory reason for Coles' discharge.

As such, the burden shifts back to Coles. Coles asserts that his infractions were not severe enough to warrant dismissal. Coles also rests on his assertions that Zorn was treated more favorably.

As to the first argument, it is not the Court's position to "sit as a super-personnel department." Thomas v. Aventis Pharm., Inc., No. 05-13378, 2006 U.S. App. LEXIS 9706, at *8 (11th Cir. Apr. 18, 2006)(citing Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)). "Reasonable people may disagree about whether an employer acted correctly or fairly, 'but such potential disagreement does not, without more, create a basis to *disbelieve* an employer's explanation that it in fact based its decision' on its asserted non-discriminatory reasons." Harrington v. Children's Psychiatric Ctr., Inc., Case no. 03-60213-civ-Huck/Turnoff, 2003 U.S. Dist. LEXIS 25003, at *12 (S.D. Fla. Dec. 5, 2003)(quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997))(emphasis in original). Accordingly, Coles' argument, that his failure to timely add hops was not sufficient justification for Coles' termination,

fails to create a genuine issue of material fact of pretext.

As noted, Coles also appears to rely on the Zorn comparison to create a genuine issue of material fact as to pretext. The Eleventh Circuit has held that:

> In determining whether an employer's stated reason for termination is pretext for discrimination, . . . a plaintiff can still prove . . . discrimination by showing that a[n] . . . employee with a similar employment history as the plaintiff was not subject to the same adverse employment action, even when an employer has given good reasons-the factual bases of which are unrebutted by plaintiff-for terminating the plaintiff.

Gamboa, 170 Fed. Appx. at 612 (citing Rojas v. Fla., 285 F.3d 1339, 1343-44 (11th Cir. 2002)). However, for the reasons listed above, Zorn was not a similarly situated employee. As such, Coles' attempt to raise a genuine issue of material fact as to pretext by identifying Zorn as a comparator is unsuccessful. Further, because, beyond the Zorn comparisons, Coles provides no evidence, other than conclusory allegations, that Coles' termination was racially motivated, Coles fails to raise a genuine issue of material fact that ABI's proffered reasons for the termination are pretextual.

Moreover, Coles' pretext arguments are hampered by the fact that the person who initially recommended Coles' termination, Cedric Cruse, and one of the two people who made the final decision to terminate Coles, plant manager Sylvester Robinson, are both members of Coles' protected class, African-American. Moore v. Alabama Dep't of Corr., 137 Fed. Appx. 235, 239 (11th Cir. 2005)(citing Elrod v. Sears Roebuck & Co., 939 F.2d 1466, 1467 (11th Cir. 1991)("[w]here

12

decision-makers are also members of protected class, the plaintiff faces a greater burden.")).

Coles' arguments are further burdened by the fact that the first two workers assigned to the brewery department following Coles' termination were African-American. Soto, 2005 U.S. Dist. LEXIS 26050, at *28 ("the fact that both her replacement and the man who fired her . . . are also [members of her protected class] belies a discriminatory motive . . . ."). For the foregoing reasons, the Court grants ABI's motion for summary judgment.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

1.   The Motion for Summary Judgment (Doc. #19) is **GRANTED.**

2.   The Clerk is directed to enter Judgment for the Defendant and close this case.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this <u>28th</u> day of July, 2006.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record